IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* ANN HOWARD,<br><br>Relator,<br><br>v.<br><br>URBAN INVESTMENT TRUST, INC.,<br>an Illinois corporation and its successor,<br>RM HOLDINGS; SYNERGY<br>AFFILIATES, LLC, an Illinois limited<br>liability company, and RUDY MULDER,<br>ROXANNE GARDNER, and<br>JOHNNY TERZAKIS, individuals,<br><br>Defendants. | No. 03 C 7668<br><br>Wayne R. Andersen<br>District Judge |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant Roxanne Gardner's 12(b)(6) Motion to Dismiss Counts III and IV of the Fourth Amended Complaint [214], which was joined by Defendant Rudy Mulder. For the following reasons, Defendants' motion is denied.

**BACKGROUND**

Plaintiff Ann Howard's well-pleaded allegations in her Fourth Amended Complaint, which the court treats as true and views in a light most favorable to the plaintiff for purposes of this motion, are as follows. Howard began doing work for Urban Investment Trust, Inc. ("Urban") in June 2000 as Senior Residential Accountant. In her position at Urban, Howard had access to accounting information of the Chicago Housing Authority ("CHA"). Between 2000 and the summer of 2002, Urban was the property manager for residential and commercial properties owned and operated by the United States Department of Housing and Urban

1

Development ("HUD") and the CHA. Urban had a contract with the CHA that prohibited Urban from using money in CHA-HUD accounts for any purposes other than those listed in the contract. Under the terms of the contract, Urban was permitted to deduct funds from the CHA accounts for housing expenses and payroll, but was prohibited from using government money for personal uses.

Howard alleges that in early 2000, she observed that the CHA bank accounts did not reconcile with the CHA tenant ledgers and that the money missing from the CHA accounts had been deducted by Urban without proper supporting documentation. Howard alleges that Urban manager Peter Mori told Howard that Urban would return the money to the CHA accounts by the end of the year and that she should reconcile the accounts as if the money was there. Howard reconciled the bank accounts to indicate that the withdrawals had never occurred. Howard alleges that this was the only time that she reconciled the bank accounts and that in April 2002, after Howard subsequently refused to further reconcile the accounts, Mori hired another employee who assumed many of Howard's responsibilities. Howard alleges that on June 1, 2002, she called Synergy and spoke to a woman named Madeline who told Howard that Madeline had heard about the claims concerning the CHA investigation of Urban's withdrawal of funds from the CHA-HUD accounts and that she would talk to defendant Mulder. The next day, Howard decided to permanently leave her employment at Urban because she felt she was being harassed.

On July 2, 2007, Defendant Urban and its successor RM Holdings, and individual defendants Rudy Mulder, Roxanne Gardner, and Johnny Terzakis (the "individual defendants") moved to dismiss Plaintiff's Third Amended Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Third Amended Complaint consisted of three counts:

(I) Embezzlement of HUD Funds Under the False Claims Act, (II) Presenting a False Claim Under the False Claims Act, and (III) Retaliation and Constructive Discharge.

On September 28, 2007, this Court issued an opinion which denied Urban and the individual defendants' motion with respect to Counts I and II of the Third Amended Complaint, and granted the motion with respect to Count III of the Third Amended Complaint (though Count III remained with respect to Defendant Synergy). In dismissing Count III as against Urban and the individual defendants, the court reasoned as follows: "Howard's complaint clearly states that she was employed by Synergy, which then assigned her to work at Urban. Simply put, this made Synergy Howard's employer, not Urban. Because Urban and the individual defendants are not Howard's employer, she cannot bring an action against them under 31 U.S.C. § 3730(h)."

On June 23, 2009, Plaintiff filed a Motion for Leave to Amend Third Amended Complaint. Howard summarized the intended amendments to the complaint as follows:

> Amend the caption and defendants' description to include successors to RM Holdings
>
> Amend introductory language for clarity and to conform to language changes in the amendments to the False Claims Act signed into law on May 20, 2009
>
> Conform pleadings to the proof and some of the discovery adduced to date
>
> Set forth factual allegations warranting the piercing of the corporate veil
>
> Add all defendants to Count III, Retaliation
>
> Add Count IV, Intentional Infliction of Emotional Distress

(Pl.'s Mot. For Leave to Amend Third Am. Compl. 2.) The Court granted Plaintiff's motion to file the amended complaint on July 29, 2009, and Plaintiff filed the Fourth Amended Complaint on August 14, 2009.

Defendant Gardner filed the instant motion to dismiss Counts III and IV of the Fourth Amended Complaint on September 14, 2009. Gardner argues that Count III should fail because she was not Plaintiff's employer, and Plaintiff's new "corporate-veil allegations" invalid.

Gardner argues that Count IV should fail because it is purely formulaic, and Plaintiff has not alleged any extreme or outrageous behavior or intent to inflict severe emotional distress.

On October 8, 2009, Defendant Rudy Mulder filed his motion to join in Defendant Gardner's motion to dismiss. That motion was granted on October 15, 2009, and the Court addresses the instant motion to dismiss with respect to both Defendant Gardner and Defendant Mulder.

## STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff and the court must accept all material facts alleged in the complaint as true. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 555).

Additionally, a complaint must describe the claim with sufficient detail as to "give the defendants fair notice of what the...claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint does not need to set forth all relevant facts or recite the law. Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

## DISCUSSION

At issue are Counts III and IV of Plaintiff's Fourth Amended Complaint.

**I.     Count III – Retaliation and Constructive Discharge**

In Count III, Plaintiff seeks damages against all defendants "for retaliation and other unlawful employment actions under the False Claims Act." (Fourth Am. Compl. ¶ 3.) Plaintiff "seeks to pierce the corporate veil and to hold all the defendants responsible for the retaliation and adverse employment actions taken against her." (Fourth Am. Compl. ¶ 3.)

Defendants move to dismiss Count III on the basis of three arguments: (1) the "corporate-veil allegations" are invalid; (2) Ms. Gardner was not associated with Urban at the time of Plaintiff's discharge (this argument is made by Ms. Gardner alone, and does not apply to Mr. Mulder); and (3) this Court previously concluded that Urban and the individual defendants were not Plaintiff's employers. We address each argument in turn.

**A.     Piercing the Corporate Veil**

In the memorandum in support of the motion to dismiss, Defendants state, "The Fourth Amended Complaint does not allege [Ms. Gardner and Mr. Mulder are] Plaintiff's employer[s]. Instead, Plaintiff's new theory relies upon 'corporate-veil allegations' to impute the alleged wrongdoing of Urban to [Ms. Gardner and Mr. Mulder]." (Mem. of Law in Supp. of Mot. to Dismiss 3.)

This is not an entirely accurate reading of Plaintiff's Fourth Amended Complaint. Plaintiff's Fourth Amended Complaint *does* allege that Ms. Gardner and Mr. Mulder are

Plaintiff's employers. (Fourth Am. Compl. ¶¶ 30, 35.) Regardless, our current focus is the veil-piercing argument, and the question is whether Plaintiff's Fourth Amended Complaint contains sufficient information to support a claim that the "corporate veil" separating the corporation (Urban) and the individual defendants (namely, for purposes of this motion, Ms. Gardner and Mr. Mulder) should be pierced.

To establish a claim of corporate veil-piercing in Illinois, Plaintiff must show: (1) that there is "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Sea-Land Servs. Inc. v. Pepper Source*, 993 F.2d 1309, 1311 (7th Cir. 1993) (quoting *Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985)).

Defendants argue that the paragraphs of Plaintiff's Fourth Amended Complaint dealing with the concept of veil-piercing (paragraphs 43 and 44) are "formulaic and conclusory, and fail to state any facts that would plausibly entitle Plaintiff to relief." (Mem. of Law in Supp. of Mot. to Dismiss 3.) It is true that paragraph 43 simply asserts legal conclusions regarding "unity of interest and ownership," and that paragraph 44, though making loose references to "private bank accounts" and failure to "maintain accurate records," is rather vague. However, the fact that the details supporting these allegations are not contained in these specific paragraphs does not mean that the allegations are unsupported. As specifically noted in paragraph 44, other portions of the Fourth Amended Complaint outline the details supporting Plaintiff's veil-piercing arguments.

Defendants argue that there are no details anywhere in the Fourth Amended Complaint specifically alleging that Ms. Gardner and/or Mr. Mulder co-mingled, converted or embezzled any funds, and that Plaintiff's "indiscriminate use" of the plural term "defendants" so "muddies" the claims that they should be dismissed. (Mem. of Law in Supp. of Mot. to Dismiss 6-7.) We disagree.

There are several portions of the Complaint that allege facts sufficient to support a claim of veil-piercing. For example, Plaintiff alleges that funds from HUD were transferred from Urban to a corporation named "Centerpoint," which was owned by the defendants. (Fourth Am. Compl. ¶ 93.) Plaintiff also alleges that approximately $1.5 million was withdrawn from CHA-HUD residential accounts through dozens of withdrawals, and that only a handful of people, including Gardner and Mulder, were authorized to disburse funds from these accounts. (Fourth Am. Compl. ¶¶ 71, 73.) The fact that Plaintiff sometimes used the plural term "defendants" rather than naming each and every defendant individually each time she alleged a fact supporting her claim does mean that the allegation is so "muddied" that it cannot survive a motion to dismiss. A complaint does not need to set forth all relevant facts. At the complaint stage, plaintiffs are not expected to know or allege the complete details of each defendant's precise role in the complex transactions that supposedly took place. It is sufficient to state that the group of named defendants was responsible for the alleged misconduct specified in the complaint. The discovery process is used to determine the exact particulars of each transaction.

Moreover, even if Ms. Gardner and Mr. Mulder believe a complaint is invalid unless it specifically identifies them by name, they have, in fact, been named individually for specific conduct alleged in the complaint. For example, Plaintiff stated, "Mulder withdrew operating funds from each building commencing in approximately June 2001." (Fourth Am. Compl. ¶ 89.) Plaintiff also alleged that Johnson had confirmed that missing funds had been paid to Mulder, Gardner and Terzakis. (Fourth Am. Compl. ¶ 95.) There is sufficient detail in the Fourth

Amended Complaint to put Gardner and Mulder, individually and collectively, on notice of the facts supporting Plaintiff's veil-piercing claim.

We note that in her opposition to the instant motion, Plaintiff argued that "this Court previously determined that Plaintiff's allegations sufficiently established Gardner and Mulder embezzled public housing monies," citing the Court's opinion of September 28, 2007. We point out that this statement mischaracterizes the opinion of September 28, 2007. While we did determine that certain allegations made by Plaintiff were sufficient to survive a motion to dismiss, this Court made no factual determination as to whether any defendant actually embezzled any monies. Similarly, we do not make any conclusions now as to whether Defendants actually embezzled funds. We simply conclude that the veil-piercing allegation, alleging a "unity of interest" between Urban and the individual defendants, is supported with sufficient detail to survive the motion to dismiss.

**B.     Ms. Gardner's Departure from Urban**

Ms. Gardner argues that Count III should be dismissed because she was not associated with Urban at the time of Plaintiff's alleged discharge and retaliation. As noted earlier, this argument relates solely to Ms. Gardner, and the analysis does not apply to Mr. Mulder.

Based on the language in the Fourth Amended Complaint as well as the parties' briefs for this motion, it is clear that Ms. Gardner physically left Urban in November 2001. Plaintiff claims to have been constructively discharged in June 2002, which was seven months after Ms. Gardner's departure. However, it is unclear exactly what role, if any, Ms. Gardner played between November 2001 and June 2002. In one portion of her Fourth Amended Complaint, Plaintiff stated that, following a division of the Urban workforce and business in late 2001, "Gardner *remained responsible*, in whole or in part, for the operations of Urban." (Fourth Am. Compl. ¶¶ 21, 22, emphasis added.) Later in the complaint, Plaintiff stated, "Gardner *severed relations with the remaining defendants* prior to the time of plaintiff's constructive discharge." (Fourth Am. Compl. ¶ 104, emphasis added.) It is possible that both of these statements are true – Gardner may have retained a relationship with Urban after November 2001, and that relationship may have terminated sometime between November 2001 and June 2002. Or, it is possible that one of these statements in the complaint mischaracterizes Gardner's true relationship with Urban throughout this time period.

In her Fourth Amended Complaint, Plaintiff noted that she "lacks sufficient knowledge and information at this time regarding all the changes, if any, in the legal structure and / or operating authorities of Urban [following the 2001 division of Urban's workforce and business]." (Fourth Am. Compl. ¶ 21.) When considering a motion to dismiss, we must "draw all reasonable inferences in favor of plaintiff." *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999) (internal citations omitted). Given that there is some ambiguity regarding Ms. Gardner's relationship with the other defendants from November 2001 through June 2002, for purposes of deciding this motion, the ambiguity must be resolved in Plaintiff's favor.

We also note that, regardless of whether Ms. Gardner was associated with Urban at the time of Plaintiff's alleged constructive discharge, the protection provided by the statute is not limited to employee discharge, but also includes situations in which an individual is "demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment . . . ." 31 U.S.C. § 3730(h). Ms. Gardner was clearly affiliated with Urban during the time when Plaintiff alleged that other instances of harassment and discrimination occurred. Therefore, the possibility that Ms. Gardner's relationship with Urban

was severed as of November 2001 does not mean that she is insulated from liability under the statute.

Here, as in the previous section, we point out that Plaintiff's memorandum has again mischaracterized this Court's ruling of September 28, 2007. Relying on that ruling, Plaintiff stated, "As described above, (and this Court has already determined), the allegations establish that Gardner embezzled funds from HUD and the CHA and diverted them for her personal use." (Pl.'s Opp'n to Mot. to Dismiss 11.) This court has *not* determined that anyone has actually embezzled any funds. We simply state that, when the complaint is read in a light most favorable to the nonmoving party, Ms. Gardner's motion to dismiss on the grounds that she had left Urban prior to Plaintiff's constructive discharge must fail.

### C. This Court's Prior Decision

Lastly, Defendants (both Ms. Gardner and Mr. Mulder) argue that Count III should be dismissed against them because this Court previously determined that Urban and the individual defendants were not Plaintiff's employer. (Pl.'s Opp'n to Mot. to Dismiss 8 (citing *U.S. ex rel. Howard v. Urban Investment Trust, et al.*, No. 03 C 7668, 2007 WL 2893031, at *3 (N.D. Ill. Sept. 28, 2007)).)

It is true that in that prior ruling, this Court determined that Synergy, not Urban, was Plaintiff's employer. However, that finding was based on the fact that "Howard's complaint clearly state[d] that she was employed by Synergy, which then assigned her to work at Urban." *Howard*, 2007 WL 2893031, at *3. That ruling was made with respect to Plaintiff's Third Amended Complaint, which has since been amended. The Fourth Amended Complaint supersedes the prior complaint. *See Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 129 S.Ct. 1109, 1122 n.4 (2009) (citing 6 C. Wright & Miller, Federal Practice & Procedure § 1476, pp. 556-557 (2d ed. 1990)).

In the ruling of September 28, 2007, the Court relied on paragraph 33 of Plaintiff's Third Amended Complaint, which stated, in relevant part, "Synergy provided or leased labor to Urban, including Ms. Howard, and handled all of Urban's Human Resource functions, and as such, was her employer or co-employer." (Third Am. Compl. ¶ 33.) In the Fourth Amended Complaint, there is no reference to Synergy "providing" or "leasing" labor to Urban. (Fourth Am. Compl. ¶ 33.) Moreover, paragraph 35 was expanded to clarify the employment relationship as understood by Plaintiff, now stating, in relevant part:

> [Plaintiff] was hired in June 2000 by Jay Johnson, Urban's Director of Properties and a part-owner of the company, as Urban's Senior Residential Accountant. After she was hired, the Urban defendants told her that Synergy would be her co-employer, and that Synergy was responsible for Urban's HR functions and payroll. Howard did not acquire her position at Urban through Synergy; rather, she was told Synergy was her co-employer after she was hired.

(Fourth Am. Compl. ¶ 35.) Plaintiff alleges that Urban Trust and the individual defendants, including Ms. Gardner and Mr. Mulder, were Plaintiff's employers at all relevant times referenced in the complaint (Fourth Am. Compl. ¶¶ 30, 35), and the revised complaint has eliminated any reference to being hired by Synergy and "leased" to Urban. As such, accepting the allegations contained in Plaintiff's Fourth Amended Complaint as true, Defendants' motion

7

to dismiss on the basis of the Court's decision regarding the Third Amended Complaint must fail.

## II. Count IV – Intentional Infliction of Emotional Distress

In Count IV, Plaintiff "seeks damages against all defendants for the Intentional Infliction of Emotional Distress." (Fourth Am. Compl. ¶ 3.) Under Illinois Law, a claim for intentional infliction of emotional distress requires three elements: "(1) the conduct involved must be truly extreme and outrageous; (2) the defendant must either intend the infliction of emotional distress or know that there is a high probability that his conduct will result in such distress; and (3) the conduct must in fact cause severe emotional distress." *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). The distress must be "so severe that no man could be expected to endure it." *Id*.

Defendants make three arguments as to why this count should be dismissed: (1) Count IV does not allege extreme and outrageous conduct by each defendant; (2) Count IV does not allege intent by each defendant to cause emotional distress; and (3) Count IV is formulaic and fails to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

The Seventh Circuit addressed the requirements for an Illinois state law claim of intentional infliction of emotional distress to survive a motion to dismiss in *Christensen v. County of Boone, Illinois*, 483 F.3d 454 (7th Cir. 2007). The court pointed out that, regardless of the pleading requirements in a particular state, "when federal courts entertain claims under state law – whether under the diversity jurisdiction of 28 U.S.C. § 1332 or . . . the supplemental jurisdiction of 28 U.S.C. § 1367 – it is not necessary to plead facts matching elements of legal theories." *Id*. at 466. *See also Bozickovich v. Harper*, 165 F.3d 31, 1998 WL 767136 at *1 (7th Cir. 1998) ("[F]ederal notice pleading rules do not require that a complaint set forth every action

which allegedly inflicted emotional distress.") A filing under Rule 8 of the Federal Rules of Civil Procedure does not need to contain all of the facts that would be necessary to prevail. *Christensen*, 483 F.3d at 466. "Instead, the complaint 'should be "short and plain" and suffices if it notifies the defendant of the principal events.'" *Christensen*, 483 F.3d at 466 (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); Fed.R.Civ.P. 8(a)(2)). In *Christensen*, the court found that when "plaintiff's factual allegations described the principal events giving rise to the suit and attached them to a right of action cognizable under state law," the claim was sufficient to survive a motion to dismiss. *Christensen*, 483 F.3d at 466.

Incorporating the detailed allegations set forth in the first 104 paragraphs of the Fourth Amended Complaint, Count IV of the complaint is supported by sufficient detail to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. "[C]ourts may not dismiss a complaint unless it appears beyond doubt that no set of possible facts could be proved to support the plaintiff's allegations." *Bozickovich*, 165 F.3d 31, 1998 WL 767136 at *1 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). It is possible that the alleged harassment, discrimination and discharge, if proved, could be so severe as to amount to intentional infliction of emotional distress. Therefore, Count IV cannot be dismissed at this stage of litigation.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts III and IV of the Fourth Amended Complaint [214] is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: January 14, 2010