IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, *ex rel*. and ANN HOWARD, Individually,

        Plaintiffs,

        v.

URBAN INVESTMENT TRUST, INC., *et al*., an Illinois Corporation, and its successor, RM HOLDINGS; RUDY MULDER, ROXANNE GARDNER, and JOHNNY TERZAKIS, Individuals,

        Defendants.

Case No. 03 C 7668

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Motions for Costs and Fees. For the reasons stated herein, the Court (1) denies Defendant Gardner's Motion for Fees and Costs [ECF No. 485]; and (2) grants in part and denies in part Plaintiff's Petitions for Attorneys' fees and Costs [ECF Nos. 477 and 484].

## I.  BACKGROUND

The Court presumes familiarity with its September 5, 2012 Opinion and therefore provides only a brief summary of the factual background here.

Relator and Plaintiff Ann Howard (hereinafter, "Howard" or "Plaintiff") sued her former employer Urban Investment Trust,

Inc. ("Urban"), along with *inter alia* its principals, Rudy Mulder ("Mulder"), Roxanne Gardner ("Gardner"), and Johnny Terzakis ("Terzakis"), (hereinafter, collectively, the "Defendants") for multiple violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* and intentional infliction of emotional distress. The crux of the case concerned Plaintiff's allegations that Defendants embezzled large sums of money from six properties owned by the Chicago Housing Authority (the "CHA") and the Department of Housing and Urban Development ("HUD"), and used such monies for their personal gain. Howard claimed when she discovered the embezzlement she was forced to falsify documents and conceal Defendants' fraud. She also claimed Defendants retaliated against her by subjecting her to harassment and constructively discharged her employment.

On March 6, 2013, Howard's jury trial commenced. After she presented her case-in-chief, Defendant Gardner moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. The Court granted this Motion only as to Counts I and II, Howard's reverse false claims. The Court denied the Motion with respect to Howard's retaliation claim under the FCA (Count III) and her state law claim for intentional infliction of emotional distress (Count IV). As a result, those claims were submitted to the jury.

Ultimately, the jury returned a verdict in favor of Howard on Count III and found each of the Defendants liable for retaliation in violation of the FCA. It awarded Howard a total of $125,000.00 in back pay and apportioned the award as follows: Urban - $62,500.00; Gardner - $6,250.00; Terzakis - $28,125.00; and Mulder - $28,125.00. The jury found in favor of Defendants with respect to Count IV. Subsequently, the Court added prejudgment interest and doubled Plaintiff's back pay award pursuant to 31 U.S.C. § 3730(h). *See,* ECF No. 506.

Currently before the Court are the parties' Motions for Fees and Costs. Because Plaintiff had multiple attorneys handling her case, two law firms have submitted separate fee petitions. Defendants Gardner and Mulder oppose those petitions in their entirety. They contend Plaintiff is not entitled to fees because her award is *de minimis*. Alternatively, Defendants seek a substantial reduction in the amount of fees requested. Defendant Gardner has also filed her own Petition for Fees and Costs. The Court will address each in turn.

## II.  ANALYSIS

### A.  Plaintiff's Petitions for Attorneys' Fees and Costs

This suit began in 2003. Thus, it is not surprising that Plaintiff has had multiple attorneys and law firms working on various aspects of her case. Three law firms have petitioned the

Court for fees. Those law firms are Robin Potter & Associates, P.C., Ronald E. Osman & Associates, and John P. DeRose & Associates. Robin Potter & Associates and Ronald E. Osman & Associates filed a combined Petition while John DeRose & Associates filed its own. The Court will address each in turn.

### 1. Robin Potter & Associates, P.C. and
### Ronald E. Osman & Associates Ltd.'s Petition for Fees

Plaintiff's attorneys Robin Potter & Associates, P.C.'s ("Robin Potter") and Ronald E. Osman & Associates, Ltd. ("Ronald Osman") move for an award of attorneys' fees and costs under 31 U.S.C. § 3730(h), Federal Rule of Civil Procedure 54, and 28 U.S.C. § 1920. Specifically, Robin Potter seeks $1,104,732.63 in fees and costs, while Ronald Osman seeks $20,681.10 in fees and costs.

### 2. John P. DeRose & Associates' Petition for Fees

John P. DeRose & Associates also represented Plaintiff in this case. This firm has filed its own Petition for Attorneys' Fees ("the DeRose Petition"). The DeRose Petition seeks a total award of $642,120.00. Specifically, the Petition seeks an award of $605,880.00 for John DeRose and $36,240.00 for Caitlyn DeRose.

### 3. Defendant Gardner and Defendant Mulder's Objections

Gardner and Mulder object to both Petitions in their entirety. They first argue that Plaintiff is not entitled to attorneys' fees. They claim Plaintiff was not the prevailing

- 4 -

party and her award was *de minimis*.  In the alternative, Mulder
and Gardner seek a substantial reduction in the fee awards.

### 4.  31 U.S.C. § 3730(h) and Attorneys' Fees

The FCA's anti-retaliation provision requires that
defendants pay the reasonable attorneys' fees and costs for a
plaintiff's successful prosecution.  Specifically, the relevant
provision provides:

> Such relief shall include reinstatement with
> the same seniority status such employee
> would have had but for the discrimination, 2
> times the amount of back pay, interest on
> the back pay, and compensation for any
> special damages sustained as a result of the
> discrimination, including litigation costs
> and reasonable attorneys' fees.

31 U.S.C. § 3730(h).

When analyzing fee petitions under the FCA, courts employ
the "lodestar" method to determine a reasonable fee award.  *See*,
*Neal v. Honeywell*, 191 F.3d 827, 833 (7th Cir. 1999).  The
lodestar figure is calculated by "multiplying the number of hours
reasonably expended on the litigation [by an attorneys']
reasonable hourly rate[.]"  *Blanchard v. Bergeron,* 489 U.S. 87,
94 (1989).  When determining the number of hours reasonably
expended the "Court must exclude . . . [those hours that are]
excessive, redundant, or otherwise unnecessary."  *See, Stark III
v. PPM Am., Inc.,* No. 01-C-1494, 2003 WL 21223268, at *1 (N.D.
Ill. May 23, 2003).

Notwithstanding the FCA's provision, Defendants Gardner and Mulder argue that Plaintiff's fee petitions should be denied entirely. They claim that Plaintiff was not the prevailing party because her award was *de minimis*.

### a. Prevailing Party

"A party prevails . . . when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. Of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009). A party receives substantial relief even if it doesn't prevail on every claim. *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999). Indeed, the Supreme Court has held that a plaintiff "prevails . . . when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman,* --- U.S. ---, 133 S.Ct. 9, 11 (2012) (citing *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992)).

In this case, it is undeniable that the jury found in Plaintiff's favor with respect to her retaliation claim under the FCA. The jury's award of $125,000 changes the legal relationship between the parties and this change "directly benefits the [P]laintiff." *Id.* Thus, the Court finds Plaintiff to be the

prevailing party and rejects Defendants' contentions that state otherwise.

### b.  *De Minimis Award*

Next, Gardner and Mulder argue that Plaintiff's award was *de minimis*.  Because of this, they argue, an award of attorneys' fees is not warranted.

The Supreme Court has held that "[w]hen a plaintiff recovers only nominal damages because of [her] failure to prove an essential element of [her] claim for monetary relief . . . the only reasonable [attorney] fee is usually no fee at all." *Farrar v. Hobby,* 506 U.S. 103, 115 (1992).  The Seventh Circuit has adopted a three-factor test to determine if relief is nominal or *de minimis*.  It instructs courts to consider "1) the difference between the judgment recovered and the recovery sought; 2) the significance of the legal issue on which the plaintiff prevailed; and, 3) the public purpose served by the litigation." *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir. 1997).

When considering these factors, the Court does not find the award here *de minimis*.  While Defendants are correct that Plaintiff's actual award was far less than her initial demand, the Court finds the claim which Plaintiff prevailed significant. *See, Zagorski v. Midwest Billing Services*, 128 F.3d 1164, 1166 (7th Cir. 1997) (reversing a district court's denial of fees to

a plaintiff who recovered $100 and noting that "[s]uccess must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked."). The jury determined all Defendants were liable for retaliation under the FCA. This statute serves to encourage individuals to expose fraudulent activity relating to Government funds. *See*, *U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 943-44 (6th Cir. 1997) (noting that the "legislative history [of 31 U.S.C. § 3730(h)] indicates that Congress understood that few individuals will expose fraud if they fear their disclosures will lead to harassment, demotion, loss of employment or any other form of retaliation.") (citations omitted). This purpose combined with the purpose the statute serves to the public at large causes the Court reject Defendants' arguments regarding a *de minimis* award. *Cf. Farrar*, 506 U.S. at 115-116 (declining to award fees to a plaintiff who received $1 for his Section 1988 claim). Accordingly, the Court proceeds to the inquiry of the reasonableness of fee petitions.

### c. Reasonableness of Fees

As previously mentioned, the Seventh Circuit has affirmed a district court's use of the lodestar method to calculate fees under Section 31 U.S.C. § 3730(h). *See, Neal,* 191 F.2d at 833. When employing the lodestar method, courts multiply "the number of hours reasonably expended on the litigation . . . by a

reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).  Before doing so, however, the Court examines the reasonableness of the fee applicant's claimed hours and claimed rate.  *Id.*

### *i.  Hours Expended*

### (a)  Robin Potter and Associates & Ronald E. Osman and Associates, Ltd.'s Claimed Hours

Robin Potter submits more than 300 pages of billing statements totaling 4101.13 hours. *See*, ECF No. 484-8.  Ronald E. Osman submits billing statements for 51.48 hours.  *See,* ECF No. 484-5.  The firms contend these hours were those that were spent reasonably on the case.

Mulder and Gardner argue that the hours are excessive and unnecessary.  They contend Plaintiff is not entitled to the fees associated with her unsuccessful and unrelated claims.  Plaintiff responds that the hours to which Defendants object were necessary because of her veil piercing theory and because many of the allegations in Counts I and II (the two claims the Court granted Defendants' motion for a directed verdict on) were necessary for Plaintiff's successful retaliation claim.

After reviewing Robin Potter's 300 page billing statement, the Court does not find any of the hours obviously "excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668

F.3d 927, 931 (7th Cir. 2012). While Defendants request that the Court reduce Plaintiff's fee award by a substantial amount, neither Gardner nor Mulder offer specific objections concerning hours that are excessive, redundant, or otherwise unnecessary. This failure, combined with the fact that the evidence Robin Potter has submitted is sufficiently detailed, causes the Court to find the hours reasonable. *See, Gibson v. City of Chicago*, 873 F.Supp.2d 975, 982 (N.D. Ill. 2012) (stating the fee applicant has the burden of producing sufficient evidence to show that she is entitled to the fees requested and once the applicant satisfies this burden the opposing party must show a reduction is warranted.).

The Court also finds the evidence from Ronald E. Osman comprehensive. *See,* Pl.'s Fee Pet., Osman Decl., ECF No. 484-5. The Court acknowledges that the fees the firm seeks relate largely to Plaintiff's unsuccessful *qui tam* action. However, the Court does not find these hours unnecessary as Counts I and II concern the same core set of facts as Plaintiff's retaliation claim. *See, Flanagan v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 663 F.Supp.2d 662, 668 (N.D. Ill. 2009) ("when claims are interrelated . . . time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims."); *see also, Fanslow v. Chicago Mfg.*

*Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004) (noting that a retaliation claim under the FCA can exist without a *qui tam* action, but stating that a plaintiff must prove her actions were "taken in furtherance of an FCA enforcement action" to sustain a retaliation claim).  Thus, the Court declines to subtract any hours from Robin Potter and Ronald Osman's fee petitions as unreasonable, unnecessary, or redundant.

### (b)  DeRose Fee Petition

Attorneys  John  and  Caitlyn  DeRose  have  submitted contemporaneous time records to support their fee petition.  John DeRose claims to have spent 1101.60 hours on Plaintiff's case, while Caitlyn DeRose avers that she spent 151 hours on the case. Defendants Gardner and Mulder repeat many of the same arguments concerning a reduction of hours based upon the time spent on unrelated and unsuccessful claims.  As support, they reference Seventh Circuit precedent which states that FCA retaliation claims can proceed independently of *qui tam* actions.  *See,* Def. Gardner's Opp. to Pl.'s Attorneys' Fees Pet. at 7. (citing *Fanslow*, 384 F.3d at 479).  The Court finds Gardner's argument here misplaced.  While it is true that a retaliation action can proceed without a *qui tam* action, this does not mean that the two claims are unrelated.  Instead, the Supreme Court instructs that the relevant inquiry in determining whether claims are related is

whether the claims are based upon a "common core of facts" or "related legal theories." *Hensley*, 461 U.S. at 435. The Court finds Plaintiff's claims relate to a common core of facts and therefore rejects Defendants' argument concerning unnecessary hours.

## *ii. Hourly Rates*

### (a) **Robin Potter and Ronald E. Osman's Hourly Rates**

Potter and Osman's petition requests fees for four attorneys, one paralegal, and an unspecified number of legal associates. The requested hourly rates for the specified attorneys are as follows: Robin Potter, $550.00, Denise Quimbly $375.00, M. Nieves Bolanos $300.00, and Ronald E. Osman $400.00-$455.00 (over a period of four years).

Mulder does not object to the hourly rate of any of these attorneys. Gardner, on other hand, argues that Ronald Osman's rate should be reduced to $400.00 per hour and Robin Potter's rate should be reduced to $375.00 per hour. As support, Gardner relies upon portions of the Retainer Agreement Plaintiff submitted in her Fee Petition. *See,* ECF No. 484-5 Page ID# 5363.

The Seventh Circuit defines an hourly rate "as one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). It is presumed that "an attorney's actual billing rate for

similar litigation is appropriate to use as the market rate." *Id.* The fee applicant bears the burden of "produc[ing] satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community." *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984)). If the fee applicant satisfies this burden, the opposing party must present evidence to support why a lower rate is "essential." *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotation marks omitted).

As support for their hourly rates, the attorneys have each submitted their own declarations stating that their requested rates are in accordance with those in the community. *See,* ECF Nos. 484-5 (Osman), 484-9 (Bolanos), 484-10 (Potter). In addition to this, the Petition provides affidavits from third parties averring that the rates requested are reasonable. *See,* ECF No. 484-1; 484-2; 484-3; 484-4. To top it off, the Petition includes an updated version of the Laffey Matrix, (a guideline the United States Attorney's Office in Washington, D.C. has created to estimate reasonable attorneys' fees) to illustrate that the rates are reasonable. *See, Gibson v. City of Chicago*, 873 F.Supp.2d 975, 984 (N.D. Ill. 2012) (noting that the Seventh Circuit has never formally adopted the Laffey Matrix, but that it

"can assist the district court with the challenging task of determining a reasonable hourly rate."). When considering this evidence as a whole, the Court finds it convincing. Gardner's evidence, on the other hand, falls short of demonstrating why a reduced hourly rate is "essential." *People Who Care,* 90 F.3d at 1313. Accordingly, the Court adopts the hourly rates submitted by the Robin Potter and Ronald Osman.

### (b) John DeRose and Caitlyn DeRose's Hourly Rate

In the DeRose petition, John DeRose submits an hourly rate of $550.00 per hour. As support, he submits his own declaration explaining his 40 plus years of experience as an attorney and explaining his specialization in Federal Civil Rights and Employment litigation. *See*, ECF No. 479. He does not, however, provide any additional support. Caitlyn DeRose seeks an hourly rate of $240.00 per hour. She also provides a declaration to support this rate. *See,* ECF No. 480.

Gardner argues that John DeRose's hourly rate should be reduced. She contends that John DeRose's evidence is insufficient to support an hourly rate above the market rate. With respect to Caitlyn DeRose, Gardner argues that she should not receive any award because her work was unnecessary and redundant.

After reviewing the evidence submitted in the Fee Petition, the Court agrees with Gardner's arguments concerning John DeRose, but disagrees with her contentions regarding Caitlyn DeRose. *See, Pickett*, 664 F.3d at 640 (stating that the fee applicant must present evidence in addition to his own affidavit to support the fee award). John DeRose admits his requested rate is above the suggested rate in the Laffey Matrix, yet the only evidence he offers is his own assertion that he "has long been engaged in this type of litigation." Pl.'s Mem. in Support of Attorneys' Fees at 6, ECF No. 478, Page ID# 5254. This is simply not enough to support a rate significantly above the market rate. *Pickett*, 664 F.3d at 640. Because of this, the Court reduces John DeRose's hourly rate to $475.00, that which is provided in the Laffey Matrix. *See, Blum*, 465 U.S. at 894 n.9 (hourly rate is generally determined by the "normal hourly rates for attorneys of like skill and experience." ).

The Court rejects Gardner's argument surrounding Caitlyn DeRose. It is true that Ms. DeRose started working on the case only a few weeks prior to trial. However, her lack of claimed hours accounts for this delay. Additionally, Caitlyn DeRose seeks a modest hourly rate – one below that which is provided in the Laffey Matrix. These facts combined with the fact that Ms. DeRose delivered Plaintiff's opening statement at trial and

assisted in daily trial preparations, cause the Court to reject Gardner's argument that she should not be compensated.

The Court also takes this time to note that Gardner's assertions regarding Ms. DeRose's assistance being necessary only for the convenience of her father are not only offensive, but also meritless. To imply that Ms. DeRose was not acting as an attorney and instead was acting as an aide to her disabled father when she delivered the opening statement in this case is ridiculous. As a reminder, this case was ten years old when Caitlyn DeRose joined the legal team. It comes as no surprise that she needed to spend a number of hours to familiarize herself with the facts and legal theories of the case before preparing an opening statement or any other argument. Thus, the Court rejects Gardner's argument concerning Caitlyn DeRose and adopts her requested hourly rate of $240.00 per hour.

### iii. Lodestar Figure

After determining the hours and rates for each of the attorneys the Court is able to calculate the lodestar figure. For the Potter & Osman Petition, that figure amounts to $1,093,248.70 in fees ($1,0709,095.21 for Robin Potter and Associates and $14,153.50 for Ronald E. Osman & Associates). For the DeRose Petition, the figure amounts to $559,500.00 ($523,260.00 for John DeRose and $36,240.00 for Caitlyn DeRose).

### iv. Lodestar Rate Reduction

While there is a "strong presumption" that the lodestar figure produces a reasonable fee award, that presumption may be overcome if the lodestar does not take into account one of the twelve factors described in *Hensley v. Eckhart* 461 U.S. 424, 433 (1983*). Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1669 (2010). Those factors include:  (1) the time and labor required; (2) the difficulty of the questions presented; (3) the skill required to provide adequate legal representation; (4) the attorney's inability to accept other employment; (5) the customary fee associated with similar cases; (6) the consideration of a fixed or contingent fee; (7) the time limitations imposed by the client; (8) the amount of money involved and the results obtained; (9) the experience and reputation of the attorneys; (10) the "undesirability" of the case; (11) the length of the professional relationship with the client; and (12) the awards in similar cases. *Hensley*, at 430, n.3.

In *Hensley*, the Court noted specifically that awards may be adjusted in light of the plaintiff's "level of success." *Hensley,* 461 U.S. at 436.  The Supreme Court set forth the basic approach for district courts to use to determine whether to adjust the lodestar amount to account for a party's limited success.  *See, id.* at 434-38.  In a case involving related

claims, courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435; *see also, Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir. 1998). "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436. The *Hensley* Court further instructed that cases involving unrelated and unsuccessful claims should be scrutinized carefully when awarding fees since unrelated and unsuccessful claims "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* at 435 (citations omitted).

Defendants argue that Plaintiff's unsuccessful *qui tam* claims (Counts I and II) and the unsuccessful claim for intentional infliction of emotional distress are unrelated to the retaliation claim under Section 3730(h). Therefore, they contend Plaintiff should not be compensated for the time spent on those claims. Additionally, Defendants argue that the great disparity between Plaintiff's actual award and her initial demand justifies a reduction in the lodestar figure. After considering Plaintiff's limited success and the disparity between her initial demand and actual award, the Court agrees that a reduction is warranted.

In August 2008, Plaintiff sought more than $2 million from Defendants for her claims. *See,* ECF No. 496-1. (Allegedly, when Plaintiff first filed this case in 2003, she sought almost four times this amount.) Indeed, at trial, Plaintiff's attorneys suggested that the jury award more than a million dollars for Plaintiff's claims. Despite this suggestion, the jury awarded Plaintiff a mere $125,000. While this award is doubled pursuant to § 3730(h), the Court finds Plaintiff's total request for more than $2 million in attorneys' fees excessive in light of her limited success at trial. It is worth noting that the amount of fees requested is more than fifteen times the jury's award.

Plaintiff argues that the Seventh Circuit has rejected the notion that the fees must be calculated proportionally to damages. *See,* Pl.'s Reply to Defs.' Objections to Pl.'s Fee Pet. at 5 (citing *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999)). This may be true, but Plaintiff neglects to consider the Seventh Circuit's instructions that courts should take into account a fee award that is disproportionate to the damages awarded. *See, Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009). In fact, in *Anderson v. AB Painting and Sandblasting, Inc.*, 578 F.3d 542, 546 (7th Cir. 2009), the Seventh Circuit stated that a request for fees that is a large multiple of the amount awarded

"raises a red flag" and should cause the Court to pause and examine the fee requested.

The fee award here raises a "red flag."  It is undeniable that the fees requested are enormously disproportionate to the recovery obtained.  While the Seventh Circuit has held that a fee award should not be reduced merely because the request is disproportionate to the award, this does not mean that the disproportionality should be overlooked.  To the contrary, the Court looks to the Plaintiff's degree of success to determine what fee award is appropriate.  *See, Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001) (sustaining the district court's 50% limited-success reduction to $49,000 in fees as "entirely justified").

Plaintiff prevailed on one of her four claims.  Her two *qui tam* claims were dismissed on Gardner's Motion for a Directed Verdict and her intentional infliction of emotional distress claim was submitted to the jury but was unsuccessful.  While the parties dispute whether these unsuccessful claims were related to the FCA retaliation claim and whether the *qui tam* claims were the central aim of the dispute, the Court declines to take a position on these issues.  Instead, the Court finds Plaintiff's limited success and the great disparity between the fees requested and the recovery obtained warrant a reduction in the lodestar.  *See,*

*Hensley*, 461 U.S. at 436; *Anderson*, 578 F.3d at 545 (the degree of success is the critical consideration in determining a fee award).

The Court also notes that Plaintiff's heavy reliance on *Neal v. Honeywell* is misplaced. While Plaintiff attempts to justify the $2 million in requested fees to the court's $1.46 million award in *Neal*, in that case the jury awarded Neal $550,000 for emotional distress and $40,000 in back pay – nearly five times the amount awarded here. *Neal v. Honeywell*, 995 F.Supp. 889, 891 (N.D. Ill. 1998).

Accordingly, in its discretion, the Court finds a 60% lodestar reduction appropriate and reduces each of the fee petitions by this amount. After reducing the fees by such an amount the Court awards Robin Potter's firm $646,378.03 in fees, Ronald E. Osman's firm $8,492.10 in fees, John DeRose $209,304.00 in fees, and Caitlyn DeRose $14,496.00 in fees.

### *5. Costs*

Robin Potter and Ronald Osman's Petition also seeks an award of costs. Potter claims to have spent $25,637.07 in costs while Osman claims to have spent $6,527.60 in costs. Gardner and Mulder do not offer any specific objections to these costs. Instead, the Court presumes Gardner and Mulder object to an award of any costs in the same way they objected to an award of fees.

Section 3730(h) provides a successful plaintiff "litigation costs." 31 U.S.C. § 3730(h). The Seventh Circuit has likened litigation costs to "ordinary costs" defined in 28 U.S.C. § 1920. *Neal*, 191 F.3d at 834. Accordingly, Plaintiff may recover (1) fees of the clerk; (2) transcript fees for transcripts necessary for the case; (3) fees and disbursements for witnesses; (4) copying costs for materials necessary for the case; (5) docket fees; and (6) fees for court appointed experts and interpreters. 28 U.S.C. § 1920. A plaintiff cannot, however, recover "fees of expert witnesses, travel expenses, [personal expenses] and miscellaneous expenses." *Neal*, 191 F.3d at 834. After reviewing Potter's itemized costs, it is apparent that it seeks to recover fees for travel and other personal expenses in connection with the case. *See,* ECF No. 484-8, Page ID# 5655 (listing expenses for "treats for deps[,]" "parking[,]" "dep prep[,]" and "snacks for dep[.]"). These expenses do not fall within the recoverable costs of Section 1920 and in fact are expressly excluded in *Neal* – the case in which Potter's Petition heavily references. Accordingly, the Court refuses to award these costs. Given the length of Potter's current bill of costs, the Court declines to go line by line and determine which costs are permissible and which are not at this juncture. Instead, the Court directs Robin Potter & Associates to submit a revised Bill of Costs within seven (7) days of the entry of this Opinion. The revised bill of

costs should include only those costs provided for expressly in Section 1920. If it does not, the Court will deny the bill of costs in its entirety.

Ronald E. Osman's bill of costs does not suffer from the same deficiencies. The Court finds the expenses listed recoverable and finds the documentation to support such costs sufficient. Defendants do not offer any objections concerning these costs. As such, the Court awards Ronald E. Osman & Associates $6,527.60 in costs.

### B.  Defendant Gardner's Petition for Attorneys' Fees and Costs

Defendant Gardner also moves for fees and costs. She claims she is entitled to fees under the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412. Not surprisingly, Plaintiff disagrees. She contends that the EAJA is inapplicable. The Government also filed a response to Gardner's Fee Petition. While it did not take a position regarding the merits of Gardner's request, it also pointed out the inapplicability of the EAJA.

In relevant part, the EAJA states:

> Except as otherwise specifically provided by statute a court shall award to a prevailing party other than the United States[,] fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency

> action, brought by or against the United
> States in any court having jurisdiction of
> that action, unless the court finds *the
> position of the United States* was
> substantially justified[.]

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

After examining this language, it is clear that the EAJA and the provision concerning fees applies only to suits brought by or against the United States where the Government took a position that was not substantially justified. In this case, the United States did not take any position with respect to Plaintiff's claims because the Government declined to intervene in the case. Accordingly, Gardner's request for fees under the EAJA is inappropriate and is therefore denied.

As an aside, the Court notes that even if Gardner had petitioned for fees under the FCA the result would be the same. While the FCA entitles defendants to "reasonable attorneys' fees and expenses if the defendant prevails in the action," the Court does not find that Plaintiff's suit was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 29 U.S.C. § 3730(d)(4). Therefore, the Court refuses to grant Gardner an award of attorneys' fees. *See generally*, *Gross ex rel. U.S. v. AIDS Research Alliance-Chicago*, No. 01 C 8182, 2004 WL 905952 at *9 (N.D. Ill. Apr. 27, 2004) (refusing to grant a defendant's request for fees even after a

relator's claims were dismissed with prejudice because the claims were not "frivolous or vexatious").

## IV.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.  Grants in part and denies in part Robin Potter & Associates and Ronald E. Osman's Petition for Attorneys' Fees and Costs [ECF No. 484];

2.  Grants in part and denies in part John DeRose & Associates Attorneys' Fees Petition [ECF No. 478]; and

3.  Denies Defendant Gardner's Petition for Attorneys' Fees and Costs [ECF No. 485].

The Court awards Robin Potter & Associates $646,378.03 in fees, Ronald E. Osman & Associates $8,492.10 in fees, and John DeRose & Associates $223,800.00.  The Court awards Ronald E. Osman & Associates $6,527.60 in costs.  The Court denies Robin Potter's current Bill of Costs and grants the firm seven (7) days from the entry of this Opinion to file a revised Bill of Costs.


**IT IS SO ORDERED**.


**DATE:** September 9, 2013

_____
Harry D. Leinenweber, Judge
United States District Court